19CA0551 Peo v Jones 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 19CA0551 City and County of Denver District Court No. 18CR5447 Honorable Shelley I. Gilman, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Michael Jones, Defendant-Appellant. JUDGMENT AFFIRMED Division A Opinion by JUDGE FREYRE Fox and Lipinsky, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Shelby A. Krantz, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-
Appellant 
1 ¶ 1 Defendant, Michael Jones, appeals his conviction for robbery, contending there was insufficient evidence to support it. We disagree and affirm. I. Background ¶ 2 After meeting codefendant Carla Garnier at a bus stop, Jones decided to spend the day with her while she ran errands. They ultimately ended up at a different bus stop where the “regulars” she knew said that the man who had robbed her a week earlier was present. As Jones watched, Garnier confronted the victim and demanded that he “give [her her] fucking money back.” The “regulars” began hitting the victim as Garnier continued to demand her money. When the victim refused her demand, Garnier held him by the waist and attempted to take his wallet. The victim broke free and ran across the street. Garnier chased after him while Jones remained at the bus stop. ¶ 3 Shortly thereafter, Jones walked to the street corner while pushing a man in a wheelchair. Garnier chased the victim across the street again to where Jones was standing. When the victim reached the street corner, Jones stepped off the curb and stuck out his arm. The victim hit Jones’ arm and fell to the ground. While 
2 the victim was still on the ground, Garnier rummaged through his pockets and took his wallet ¶ 4 Garnier and Jones then walked away and got on a bus. They left the bus, however, when they saw the victim speaking to the bus driver. Instead, they boarded a different bus and left the scene. ¶ 5 The State charged Jones with robbery under a complicity theory of liability. At trial, defense counsel argued that Jones did not know Garnier had planned to rob the victim and, therefore, he could not have intended to help her with the robbery. The jury disagreed and convicted him as charged. II. Sufficiency of Complicitor Liability ¶ 6 Jones contends the prosecution presented insufficient evidence of knowledge and intent to support his robbery conviction under a complicity theory of liability. We disagree. A. Standard of Review and Applicable Law ¶ 7 When considering a challenge to the sufficiency of the evidence, we review de novo “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is 
3 guilty of the charge beyond a reasonable doubt.” Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010) (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (Colo. 1973)). In making this determination, the reviewing court may not re-evaluate the credibility of witnesses, the weight of testimony, or the adequacy of a defendant’s defense. People v. Nunez, 9 P.3d 261, 267 (Colo. 1991). The reviewing court “is not permitted to act as a thirteenth juror and set aside a verdict just because it might have drawn a different conclusion had it been the trier of fact.” People v. McIntier, 134 P.3d 467, 471-72 (Colo. App. 2005); People v. Martinez, 36 P.3d 154, 163 (Colo. App. 2001). ¶ 8 As relevant here, a person commits robbery when he “knowingly take[s] anything of value from the person or presence of another by the use of force, threats, or intimidation.” § 18-4-301, C.R.S. 2020. A person acts “knowingly” “with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.” § 18-1-501(6), C.R.S. 2020. ¶ 9 Complicity is a legal theory of liability in which “[a] person is legally accountable as [a] principal for the behavior of another 
4 constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense.” § 18-1-603, C.R.S. 2020; see also People v. Childress, 2015 CO 65M, ¶ 7; People v. Vecellio, 2012 COA 40, ¶ 33. Under this theory, the prosecution must prove that the defendant acted with (1) the intent, in the commonly understood sense of desiring or having a purpose or design, to aid, abet, advise, or encourage the principal in his criminal act or conduct, and (2) an awareness of those circumstances attending the act or conduct he seeks to further that are necessary for commission of the offense in question. Childress, ¶ 29. The phrase “circumstances attending the act or conduct” is defined as “those elements of the offense describing the prohibited act itself and the circumstances surrounding its commission, including a required mental state, if any.” Id. ¶ 10 A complicitor need not possess the same mental state required for the underlying offense; he only needs to “act with an awareness the principal is or would be acting with that required mental state.” Id. And a defendant’s mental state can be proven by circumstantial 
5 evidence rather than direct evidence. People v. Collie, 995 P.2d 765, 773 (Colo. App. 1999) (“Evidence of a defendant’s intent can ‘rarely be proven other than by circumstantial or indirect evidence.’” (quoting People v. Valenzuela, 825 P.2d 1015, 1016 (Colo. App. 1991))). The jury may infer a defendant’s mental state from his conduct and other evidence, including the circumstances surrounding the commission of the crime. People v. Grant, 174 P.3d 798, 812 (Colo. App. 2007); People v. Yascavage, 80 P.3d 899, 902 (Colo. App. 2003), aff’d, 101 P.3d 1090 (Colo. 2004). B. Analysis ¶ 11 Contrary to Jones’ contention, we conclude that the prosecution presented sufficient evidence of Jones’ knowledge, based on the following evidence: • Testimony that Jones was with Garnier when the “regulars” told her that the man who had robbed her the week prior was at the same bus shelter. • Testimony that Jones witnessed Garnier confront the victim and demand that he “give [her her] fucking money back.” 
6 • Surveillance video showing Jones watching Garnier grab the victim by the waist and chase after him. ¶ 12 As well, we conclude that the prosecutor presented sufficient evidence of Jones’ intent to aid or abet Garnier, based on the following evidence: • Surveillance video showing Jones step off the curb, hold his arm out, and cause the victim to fall to the ground. • Surveillance video showing Jones stand by as Garnier rummaged through the victim’s clothing to take his wallet. • Surveillance video showing Jones and Garnier walk away together, board a bus, leave the bus, and eventually leave the scene on a different bus. ¶ 13 Viewing this evidence in the light most favorable to the prosecution, we conclude that the jury could have reasonably determined beyond a reasonable doubt that Jones committed robbery under a complicity theory. III. Conclusion ¶ 14 The judgment is affirmed JUDGE FOX and JUDGE LIPINSKY concur.